1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  HERBERT LEE SIMON, SR.,              CASE NO. CV 17-3361 SS

12              Petitioner,

13       v.                             **MEMORANDUM DECISION AND ORDER**

14  DEBBIE ASUNCION, Warden,

15              Respondent.

16

17                            **I.**

18                        **INTRODUCTION**

19

20       Effective  April  24,  2017,  Herbert  Lee  Simon,  Sr.

21  ("Petitioner"),  a  California  state  prisoner  proceeding  <u>pro</u>  <u>se</u>,

22  filed a Petition for Writ of Habeas Corpus by a Person in State

23  Custody pursuant to 28 U.S.C. § 2254 ("Petition").[1]  (Dkt. No. 1).

24  On August 3, 2017, Respondent filed an Answer to the Petition with

25  _____

26  [1] "When a prisoner gives prison authorities a habeas petition or other
    pleading to mail to court, [pursuant to the mailbox rule,] the court
    deems the petition constructively 'filed' on the date it is signed[,]"

27  <u>Roberts v. Marshall</u>, 627 F.3d 768, 770 n.1 (9th Cir. 2010); <u>Houston v.
    Lack</u>, 487 U.S. 266, 276 (1988), which in this case was April 24, 2017.

28

an accompanying Memorandum of Points and Authorities ("Mem."). (Dkt. No. 12). Respondent also lodged documents from Petitioner's state proceedings, including the Clerk's Transcript ("CT"), Reporter's Transcript ("RT") and Augmented Reporter's Transcript ("ART"). (Dkt. No. 13). Petitioner filed a Reply on September 5, 2017. (Dkt. No. 16).

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 2, 14-15). For the reasons discussed below, the Petition is DENIED and this action is DISMISSED WITH PREJUDICE.

## II.

### PRIOR PROCEEDINGS

On July 28, 2014, a Los Angeles County Superior Court jury convicted Petitioner of attempting to dissuade a witness in violation of California Penal Code ("P.C.") § 136.1(a)(2) and inflicting corporal injury on a spouse or cohabitant in violation of P.C. § 273.5(a).[2] (CT 300-01, 308-09; RT 3008-13). As to the latter offense, the jury found true allegations that Petitioner personally inflicted great bodily injury within the meaning of P.C. § 12022.7(e) and personally used a knife within the meaning of P.C. § 12022(b)(1). (CT 301, 309; RT 3010-11). On August 4, 2014, Petitioner admitted he had suffered a prior "strike" conviction under California's Three Strikes Law, P.C. §§ 667(b)-(i),

---

[2] The jury found Petitioner not guilty of attempted murder in violation of P.C. §§ 664 and 187(a). (CT 303, 308; RT 3009).

1170.12(a)-(d), and two prior serious felony convictions within
the meaning of P.C. § 667(a)(1). (CT 332-33; RT 3316-17). That
same day, the trial court sentenced Petitioner to 19 years and 4
months in state prison. (CT 332-36; RT 3319-22).

Petitioner appealed his convictions and sentence to the
California Court of Appeal (2d App. Dist., Div. 1), which affirmed
the judgment in an unpublished decision filed January 29, 2016.
(Lodgments 4-7). On March 3, 2016, Petitioner filed a petition
for review in the California Supreme Court, which denied the
petition on April 13, 2016. (Lodgments 8-9).

**III.**

**FACTUAL BACKGROUND**

The following facts, taken from the California Court of
Appeal's unpublished decision on direct review, have not been
rebutted with clear and convincing evidence and are therefore
presumed correct. 28 U.S.C. § 2254(e)(1); <u>Slovik v. Yates</u>, 556
F.3d 747, 749 n.1 (9th Cir. 2009).

On October 15, 2013, [Petitioner] stabbed his
girlfriend with a knife. The police officers who
detained him observed him to behave erratically, and he
told a nurse at the police station that he had taken PCP
and cocaine before the incident. As the case neared
trial, jail officials recorded phone calls in which
[Petitioner] told his girlfriend not to come to court to

3

testify, and that if she did come to court, she should
testify that she could not remember what happened or who
stabbed her.

(Lodgment 7 at 2).

# IV.

## PETITIONER'S CLAIM

Petitioner's only ground for habeas corpus relief is that the trial court erred when it denied the two Batson/Wheeler[3] motions Petitioner made during jury selection. (Petition at 4-9).

# V.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). Under AEDPA's deferential standard, a federal court may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, or was based upon

---

[3] Batson v. Kentucky, 476 U.S. 79 (1986); People v. Wheeler, 22 Cal. 3d 258 (1978). "Wheeler is considered the California procedural equivalent of Batson, and "a Wheeler motion serves as an implicit Batson objection." Crittenden v. Ayers, 624 F.3d 943, 951 n. 2 (9th Cir. 2010). Accordingly, the Court will refer to the motions as Batson motions.

4

an unreasonable determination of the facts. <u>Id.</u> at 100 (citing 28 U.S.C. § 2254(d)). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]" <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011) (citations and internal quotation marks omitted).

Petitioner raised his claim in his petition for review to the California Supreme Court, which denied the petition without comment or citation to authority. (Lodgments 8-9). The Court "looks through" the California Supreme Court's silent denial to the last reasoned decision as the basis for the state court's judgment. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); <u>Cannedy v. Adams</u>, 706 F.3d 1148, 1159 (9th Cir. 2013) ("[W]e conclude that <u>Richter</u> does not change our practice of 'looking through' summary denials to the last reasoned decision – whether those denials are on the merits or denials of discretionary review." (footnote omitted)), <u>as amended</u>, 733 F.3d 794 (9th Cir. 2013). Therefore, the Court will consider the California Court of Appeal's reasoned opinion denying Petitioner's claim. <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 380 (2010).

## VI.

## DISCUSSION

Petitioner argues that the trial court violated his constitutional rights when it denied his two <u>Batson</u> motions. (Petition at 4-9).

**A.   Legal Standard Governing Batson Claims**

A prosecutor's discriminatory use of peremptory challenges on the basis of race violates the Equal Protection Clause of the United States Constitution. <u>Miller-El v. Dretke</u> ("<u>Miller-El II</u>"), 545 U.S. 231, 237-40 (2005); <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986); <u>see also</u> <u>United States v. Martinez-Salazar</u>, 528 U.S. 304, 315 (2000) ("Under the Equal Protection Clause, a defendant may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race."). Indeed, "[t]he 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" <u>Foster v. Chatman</u>, 136 S. Ct. 1737, 1747 (2016) (quoting <u>Snyder v. Louisiana</u>, 552 U.S. 472, 478 (2008)).

"<u>Batson</u> provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race." <u>Snyder</u>, 552 U.S. at 472; <u>Batson</u>, 476 U.S. at 96-98. "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race." <u>Rice v. Collins</u>, 546

U.S. 333, 338 (2006); Batson, 476 U.S. at 96-97.  "[A] defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred."  Johnson v. California, 545 U.S. 162, 170 (2005).

"Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes."  Johnson, 545 U.S. at 168 (quoting Batson, 476 U.S. at 94); Snyder, 552 U.S. at 476-77.  "Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices."  Collins, 546 U.S. at 338 (quoting Purkett v. Elem, 514 U.S. 765, 767-68 (1995) (per curiam)).

"Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.'"  Johnson, 545 U.S. at 168 (quoting Elem, 514 U.S. at 767); Batson, 476 U.S. at 98.  "This final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'"  Collins, 546 U.S. at 338 (quoting Elem, 514 U.S. at 768); see also Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015) ("The opponent of the strike bears the burden of persuasion regarding racial motivation[.]").

7

The same test applies whether or not the defendant and the excluded jurors are of the same race. <u>Powers v. Ohio</u>, 499 U.S. 400, 415 (1991); <u>Paulino v. Castro</u>, 371 F.3d 1083, 1090-91 n.6 (9th Cir. 2004).

**B.    <u>The Voir Dire Proceedings</u>**

The California Court of Appeal found the following facts underlying Petitioner's <u>Batson</u> claim:

> During jury selection, the prosecution used peremptory challenges to remove two African-American men from the jury pool. In each case, [Petitioner] objected, contending that the prosecutor's action constituted purposeful discrimination on the basis of race. [Petitioner] himself is African-American. In each case, the trial court found that [Petitioner] had established a prima facie case of racial discrimination, but that the peremptory challenge could stand because the prosecution had articulated a race-neutral explanation for the challenge.

> A.    <u>Prospective Juror No. 9</u>

> Prospective Juror No. 9 was an African-American man from Gardena who was married with four children, and had retired from a job at California State University at Long Beach. He had previously served on four juries, all of

8

which reached verdicts.  During voir dire, he stated, "I don't think mental illness should be a pass for someone committing a crime."  He also stated that if there were an insanity plea at issue in a case, he would hope to have prior medical documentation of the defendant's mental condition.  Prospective Juror No. 9 stated that he had once been falsely accused of domestic violence, but believed that there were real instances of domestic violence.  He also stated that nothing in his history would prevent him from voting to convict a defendant of a domestic violence offense if the prosecution proved its case.

[Petitioner's] counsel objected to the use of the peremptory challenge, noting that there was only one African-American remaining on the panel, and contending that Prospective Juror No. 9 had made no statements indicating that he would be biased against the prosecution.  The trial court found that the defense had established a prima facie case of discrimination, and asked the prosecution to provide a race-neutral justification.  The prosecutor explained that he believed that anyone who had previously been falsely accused of domestic violence would be biased in favor of the defense.  He also stated that he did not have a good rapport with Prospective Juror No. 9, and that the juror had closed his eyes a lot.  The trial court found the

prosecutor's explanation sufficient and denied [Petitioner's] motion.

B.    Prospective Juror No. 5

Prospective Juror No. 5 was a retired African-American man who lived with his wife in West Los Angeles and had previously worked in the aerospace industry. He had served on a jury once before, in a murder case.

During voir dire, Prospective Juror No. 5 said that neither he nor his family had been victims of a crime or worked in law enforcement, nor did they have a history of mental illness. He agreed that he would entertain mental illness as a defense if it had been medically diagnosed. Prospective Juror No. 5 correctly answered questions regarding the burden of proof, and in response to hypothetical questions, said that he would vote to convict a guilty defendant in spite of pleas from the defendant's mother.

[Petitioner's] counsel objected to this peremptory challenge on the ground that Prospective Juror No. 5 had shown no signs of bias against the prosecution. The trial court found that [Petitioner] had established a prima facie case of discrimination and asked the prosecution for an explanation. The prosecutor explained that Prospective Juror No. 5 had a strong personality,

and that there were already several other such people on
the panel.  In addition, Prospective Juror No. 5 had
displayed body language that the prosecutor described as
"rude."  Furthermore, Prospective Juror No. 5 had been
unwilling to engage with questions from the prosecutor
and the court beyond tersely saying "'no,'" but nodded
and smiled when [Petitioner's] counsel was talking.  The
prosecutor pointed out that there were three African-
Americans on the panel, and that he had accepted the
panel as then constituted.

       The  trial  court  found  that  the  prosecution's
answers,  although  subjective,  were  race-neutral,  and
accordingly denied the defense motion.

(Lodgment 7 at 2-4; see also ART 434-39, 1038-43).

    After  the  jury  was  selected,  the  parties  stipulated  that
"[t]he  current  jury  has  four  African-Americans,  two  Asians  [and]
six Hispanics [with] five female [jurors]" while the "alternate
[jurors consisted of] three white people, two Hispanics [and] one
Asian  person  [with]  four  men  [and]  two  women"  and  of  "the
peremptories: for the defense eight were female, seven were male,
two Asian, five white, eight Hispanic.  For [the] People 13
[peremptories with] seven male, six female, eight Hispanics, two
blacks, two white, [and] one Asian."  (RT 1223-24).

1    **C.**   <u>**California Court of Appeal's Opinion**</u>

2

3        The California Court of Appeal rejected Petitioner's claim,

4    stating:

5

6            In this case, the trial court found that

7        [Petitioner] had made a prima facie case of a race-based

8        decision with respect to both prospective jurors, and

9        required the prosecution to offer race-neutral

10       justifications. [Petitioner] contends that the court

11       erred in each case at the third step of the analysis,

12       when it found that [Petitioner] had failed to demonstrate

13       that the prosecution engaged in purposeful

14       discrimination.

15

16           We review the trial court's finding regarding the

17       existence of purposeful racial discrimination under the

18       substantial evidence standard. We accord great deference

19       to the trial court, so long as "the trial court has made

20       a sincere and reasoned attempt to evaluate each stated

21       reason as applied to each challenged juror. When the

22       prosecutor's stated reasons are both inherently

23       plausible and supported by the record, the trial court

24       need not question the prosecutor or make detailed

25       findings. But when the prosecutor's stated reasons are

26       either unsupported by the record, inherently

27       implausible, or both, more is required of the trial court

28

than a global finding that the reasons appear sufficient."

In this case, the prosecutor's explanations for dismissing both jurors are inherently plausible and supported by the record. The record shows that Prospective Juror No. 9 stated he had once been falsely accused of domestic violence. Although this prospective juror also said that this experience would not make him hesitant to vote to convict a defendant of a domestic violence offense, a prosecutor might plausibly worry that this juror would be biased in favor of the defense. As to Prospective Juror No. 5, the record supports the prosecutor's claim that the juror provided short, monosyllabic answers to most questions. The prosecutor's other reasons for excusing Prospective Juror No. 5 – his body language and "strong personalit[y]" – by their nature cannot be discerned in a reporter's transcript, but the trial court was in a position to witness and evaluate them.

In exercising a peremptory challenge, a prosecutor's explanation "'need not rise to the level justifying exercise of a challenge for cause[,]'" and may be based on no more than "hunches . . . so long as the reasons are not based on impermissible group bias." The prosecutor's reasons for excusing Prospective Juror No. 5 did not rise far above the level of hunches, but

13

they were plausible and race neutral. Body language and the manner of answering questions are permissible race-neutral justifications for exercising a peremptory challenge, and the inability to judge such matters on a cold record is "'one reason why appellate courts in this area of law generally give great deference to the trial court, which saw and heard the entire voir dire proceedings.'"

We conclude that substantial evidence supported the trial court's finding that the prosecution did not engage in purposeful racial discrimination in exercising peremptory challenges to Prospective Jurors No. 5 and No. 9. [Petitioner's] challenge of the trial court's rejection of his Batson/Wheeler motion fails.

(Lodgment 7 at 5-7 (citations and some quotation marks omitted)).

**D.  Analysis**

There is no dispute that Petitioner "demonstrated a prima facie case, and that the prosecutor[] . . . offered race-neutral reasons for the[] strikes" of Prospective Jurors Nos. 5 and 9. As such, the Court "address[es] only Batson's third step[,]" Foster, 137 S. Ct. at 1747; (see Mem. at 15; Reply at 4), which is "the real meat of a Batson challenge." Lewis v. Lewis, 321 F.3d 824, 830 (9th Cir. 2003).

Under Batson's third step, "the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." Elem, 514 U.S. at 768; Batson, 476 U.S. at 98; Kesser v. Cambra, 465 F.3d 351, 359 (9th Cir. 2006) (en banc). "[T]he critical question in determining whether a [defendant] has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike." Miller-El v. Cockrell ("Miller El I"), 537 U.S. 322, 338-39 (2003). "In deciding if the defendant has carried his [step three] burden of persuasion, a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."[4] Batson, 476 U.S. at 93 (citation omitted); Jamerson v. Runnels, 713 F.3d 1218, 1224 (9th Cir. 2013). That is, "in considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted." Snyder, 552 U.S. at 478; see also Miller-El II, 545 U.S. at 240 (A

---

[4] "When evaluating the persuasiveness of the prosecutor's justifications at Batson's third step, the trial judge is making a credibility determination." Jamerson v. Runnels, 713 F.3d 1218, 1224 (9th Cir. 2013); see also Sifuentes v. Brazelton, 825 F.3d 506, 515 (9th Cir.) ("The trial court's determination whether the prosecutor has intentionally discriminated 'turn[s] on evaluation of credibility.'" (quoting Batson, 476 U.S. at 98 n.21)), cert. denied, 137 S. Ct. 486 (2016). "Although the prosecutor's reasons for the strike must relate to the case to be tried, the court need not believe that 'the stated reason represents a sound strategic judgment' to find the prosecutor's rationale persuasive; rather, it need be convinced only that the justification 'should be believed.'" Jamerson, 713 F.3d at 1224 (citation omitted); Mayes v. Premo, 766 F.3d 949, 958 (9th Cir. 2014), cert. denied, 135 S. Ct. 978 (2015). "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." Miller-El I, 537 U.S. at 339.

"defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination." (quoting Batson, 476 U.S. at 96-97)). "This inquiry includes comparing [minority] panelists who were struck with those non-[minority] panelists who were allowed to serve." Briggs v. Grounds, 682 F.3d 1165, 1170 (9th Cir. 2012); see also Green v. LaMarque, 532 F.3d 1028, 1030 (9th Cir. 2008) ("The 'circumstantial and direct evidence' needed for this inquiry may include a comparative analysis of the jury voir dire and the jury questionnaires of all venire members, not just those venire members stricken."). "If a prosecutor's proffered reason for striking a [minority] panelist applies just as well to an otherwise-similar [non-minority] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step." Miller-El II, 545 U.S. at 241; see also Crittenden v. Chappell, 804 F.3d 998, 1012 (9th Cir. 2015) ("'Comparative juror analysis is an established tool at step three of the Batson analysis for determining whether facially race-neutral reasons are a pretext for discrimination.'" (citation omitted)).

"Because 'it is widely acknowledged that the trial judge is in the best position to evaluate the credibility of the prosecutor's proffered justifications,' due deference must be accorded to the trial judge's determination." Jamerson, 713 F.3d at 1224 (quoting Briggs, 682 F.3d at 1171); see also Miller-El I, 537 U.S. at 339 (A "state court's finding of the absence of discriminatory intent is 'a pure issue of fact' accorded significant deference[.]"); Sifuentes v. Brazelton, 825 F.3d 506,

515 (9th Cir.) (The "credibility determination relies on the trial court's 'evaluation of the prosecutor's state of mind based on demeanor and credibility,' and is a 'pure issue of fact' that lies 'peculiarly within a trial judge's province.'" (citation omitted)), cert. denied, 137 S. Ct. 486 (2016). "Deference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations." Miller-El I, 537 U.S. at 339. "The upshot is that even if '[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . on habeas review that does not suffice to supersede the trial court's credibility determination.'" Ayala, 135 S. Ct. at 2201 (quoting Collins, 546 U.S. at 341-42).

Here, Petitioner contends the California Court of Appeal "erred in refusing to undertake any type of comparative juror analysis" of either disputed peremptory challenge in violation of "established holdings from both state and federal courts,"[5] (Reply at 9), which the Court construes as an argument that the state court's failure to conduct any comparative juror analysis was "contrary to, or involved an unreasonable application of, clearly

---

[5] A federal court, in conducting habeas review, is limited to deciding whether a state court decision violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (per curiam); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Federal habeas corpus relief "does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." (emphasis in original)). Accordingly, the Court addresses only whether the disputed peremptory challenges were made in violation of federal law.

established Federal law," under Section 2254(d)(1). However, "Batson and the cases that follow it do not require trial courts to conduct a comparative juror analysis. Rather, what [Miller-El II] established is that a comparative juror analysis is an important means for federal courts to review a trial court's ruling in a Batson challenge." Murray v. Schriro, 745 F.3d 984, 1005 (9th Cir. 2014); see also Jamerson, 713 F.3d at 1224 n.1 (The Ninth Circuit "has already addressed and rejected th[e] argument" that "the state courts unreasonably applied clearly established federal law when they declined to conduct a comparative juror analysis."). Thus, "so long as sufficient facts exist to show that a trial court has satisfied its duty under Batson's third step, [the Court's] review is limited to § 2254(d)(2)." Murray, 745 F.3d at 1006; see also Briggs, 682 F.3d at 1170 (the court reviews "the state appellate court's finding that the prosecutor did not engage in purposeful discrimination under the deferential standard of . . . 28 U.S.C. § 2254(d)(2).").

Under § 2254(d)(2), a "federal habeas court must accept a state-court finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[6] Ayala, 135 S. Ct. at 2199 (quoting

---

[6] "State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" Ayala, 135 S. Ct. at 2199-2200. This is also true of a state court's implicit factual findings. Tinsley v. Borg, 895 F.2d 520, 525-26 (9th Cir. 1990); see also Taylor v. Horn, 504 F.3d 416, 433 (3d Cir. 2007) ("Implicit factual findings are presumed correct under § 2254(e)(1) to the same extent as express factual findings.").

28 U.S.C. § 2254(d)(2)). The "standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, [the Court] must uphold it." Briggs, 682 F.3d at 1170 (citing Collins, 546 U.S. at 338-42); see also Sifuentes, 825 F.3d at 518 (In the Batson context, the AEDPA standard "is 'doubly deferential' because the federal court defers to the state reviewing court's determination of the facts, and the reviewing court defers to the trial court's determination of the prosecutor's credibility." (citation omitted)).

1.   **Prospective Juror No. 9**

Petitioner's counsel made her first Batson motion after the prosecutor exercised a peremptory challenge against Prospective Juror No. 9. (RT 434-39). Defense counsel argued that "My client is African-American, and . . . on the panel of 12 that were seated or the 18 [potential jurors initially called] there's only two African-American individuals. We are now down to one." (ART 434-35). Counsel also argued that Prospective Juror No. 9 showed no signs of bias against the prosecution. (ART 435-36). The trial court found that a prima facie case had been established and asked for the prosecutor's explanation. (ART 436). The prosecutor responded:

> This is the individual who had been previously
> falsely accused of domestic violence in the past. This
> is a domestic violence case. The defendant stands

charged with domestic violence.  I just think that
anybody who has been falsely accused of domestic violence
in the past is going to have a higher burden of proof
for me than somebody who hasn't been.  They're going to
likely see themselves . . . the victim of a false
accusation.  They're going to feel . . . some special
sympathy . . . for a defendant who is accused of domestic
violence when they've been falsely accused of domestic
violence in the past themselves.  On top of which — I
don't know if he was sleeping or nodding off — on Friday,
apparently, he had his eyes closed a lot of [the] time.

        Today I felt like we did have not a good rapport,
he and I.  I asked him some questions about that prior
domestic violence, and I felt like he was rather peevish
with me.

                    *       *       *

        And . . . while I was speaking to other jurors, it
sounded to me like he was making . . . noises . . .
beneath his breath, like he was just frustrated with the
whole process of being here.  It just didn't seem to me
like he . . . really wanted to be a juror.

(ART 436-37).  After further argument, the trial court denied
Petitioner's first Batson motion, concluding the prosecution had
"demonstrated that the reason for excusing [Prospective Juror No.

9] was really race-neutral." (ART 437-39). The California Court of Appeal affirmed, stating that the "record shows that Prospective Juror No. 9 stated he had once been falsely accused of domestic violence" and concluding that "substantial evidence supported the trial court's finding that the prosecution did not engage in purposeful racial discrimination in exercising [a] peremptory challenge[] to Prospective Juror . . . No. 9."[7] (Lodgment 7 at 6-7). This Court reviews the California Court of Appeal's determination under § 2254(d)(2)'s deferential standard.[8] Murray, 745 F.3d at 1006; Briggs, 682 F.3d at 1170.

"A federal court on habeas review of a Batson claim must consider the totality of the relevant facts about a prosecutor's

---

[7] While the trial court's statement is undeniably terse, a succinct ruling can constitute a Step Three finding that no purposeful racial discrimination has been shown. See McDaniels v. Kirkland, 813 F.3d 770, 777-78 (9th Cir. 2015) (en banc) ("The fairest reading of the state trial court's ruling is . . . that the court did find that the prosecution's proffered race-neutral justifications were genuine, even if its finding was terse."). AEDPA "demands that state-court decisions be given the benefit of the doubt[,]" Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam); McDaniels, 813 F.3d at 777-78, and in this case, the trial court's statement that the prosecutor's reasons were "really race-neutral" can be interpreted as a finding that the prosecutor's reasons were genuine, i.e., that no purposeful racial discrimination has been shown. Indeed, this is how the California Court of Appeal interpreted the trial court's ruling (Lodgment 7 at 7), and the appellate court's interpretation is entitled to a presumption of correctness. See Williams v. Rhoades, 354 F.3d 1101, 1108 (9th Cir. 2004) ("On habeas review, state appellate court findings - including those that interpret unclear or ambiguous trial court rulings - are entitled to [a] presumption of correctness. . . ."). This presumption has not been rebutted. To the contrary, Petitioner concedes the trial court found he had not shown purposeful racial discrimination. (See Petition at 4 ("After hearing the prosecutor's reasons, the trial court concluded there was no showing of purposeful racial discrimination.")).

[8] For the reasons discussed herein, even setting aside AEDPA deference and reviewing the peremptory challenge to Prospective Juror No. 9 de novo, the result would be the same.

conduct to determine whether the state court reasonably resolved Batson's final step." McDaniels v. Kirkland, 813 F.3d 770, 778 (9th Cir. 2015) (en banc) (citation and internal quotation marks omitted).  Here, because neither the California Court of Appeal nor the trial court conducted a comparative juror analysis, this Court must do so in the first instance. Sifuentes, 825 F.3d at 522; McDaniels, 813 F.3d at 778; see also Kesser, 465 F.3d at 361 ("[I]n Miller-El [II], the Court made clear that comparative analysis is required even when it was not requested or attempted in the state court.").  "'Then, [the Court] must reevaluate the ultimate state decision in light of this comparative analysis and any other evidence tending to show purposeful discrimination' to decide whether the decision rested on objectively unreasonable factual determinations." McDaniels, 813 F.3d at 778 (quoting Jamerson, 713 F.3d at 1225); Castellanos v. Small, 766 F.3d 1137, 1148 (9th Cir. 2014); see also Jamerson, 713 F.3d at 1225 (In conducting the comparative juror analysis, "AEDPA deference still applies, and the state court decision cannot be upset unless it was based upon an unreasonable determination of the facts." (citation and internal quotation marks omitted)).

Petitioner complains that the reasons the prosecutor gave for striking Prospective Juror No. 9 were "inherently improper and pretextual." (Reply at 8).  The Court disagrees.  The prosecutor struck Prospective Juror No. 9 primarily because Petitioner was charged with domestic violence, the juror "had been previously falsely accused of domestic violence[,]" and the prosecutor was concerned that "anybody who has been falsely accused of domestic

violence in the past is going to have a higher burden of proof for me than somebody who hasn't been" and is "going to feel some . . . special sympathy, I think, for a defendant who is accused of domestic violence when they've been falsely accused of domestic violence in the past themselves." (ART 436; see also ART 321-24). This is a legitimate race-neutral reason for exercising a peremptory strike. See Jamerson, 713 F.3d at 1229 ("Concern that a juror might have reason to sympathize or identify with the defendant, regardless of whether the identifying feature relates to the merits of the case, is 'relevant' under Batson."); Ngo v. Giurbino, 651 F.3d 1112, 1116-17 (9th Cir. 2011) (not wanting a juror "who felt he had been wrongfully accused of a crime" was an appropriate race-neutral justification for striking a prospective juror). Petitioner has failed to identify any other similarly situated juror who was allowed to serve on the jury. (See Petition at 4-9; Reply at 1-10). Moreover, the Court has thoroughly reviewed the voir dire proceedings and is unable to identify any other juror who alleged that they had been falsely accused of any crime, let alone the same type of crime – domestic violence – that Petitioner was accused of committing. Thus, "[c]omparative analysis . . . supports the justification proffered, as no seated juror possessed the trait that the prosecutor identified as the reason for the strike." Jamerson, 713 F.3d at 1228.

The prosecutor also challenged Prospective Juror No. 9 because he appeared to be "sleeping or nodding off" as "he had his eyes

closed a lot of [the] time[,]"[9] (ART 436), which is a legitimate race-neutral reason for exercising a peremptory challenge.[10] See United States v. Mallett, 751 F.3d 907, 915 (8th Cir. 2014) (that a juror "was suspected of sleeping" was a race neutral justification for a peremptory strike); United States v. Maseratti, 1 F.3d 330, 335-36 (5th Cir. 1993) (prosecutor gave a clearly race-neutral reason for striking an African-American juror who "'appeared to be sleeping during part of the voir dire'"). Petitioner has failed to identify any other similarly situated juror. In addition, the Court has thoroughly reviewed the record and has not identified any other juror who had his or her eyes closed and/or appeared to be sleeping during voir dire. "Thus, nothing in the record shows that this reason was clearly pretextual." Briggs, 682 F.3d at 1178; Jamerson, 713 F.3d at 1228.

Accordingly, Petitioner has not met his burden to demonstrate that the prosecutor engaged in purposeful discrimination in exercising his peremptory challenge against Prospective Juror No. 9, and the California Court of Appeal's "conclusion that valid grounds — not race — motivated the strike was not objectively

---

[9] Defense counsel also noticed that Prospective Juror No. 9 "had his eyes closed," but believed he was alert since he would nod his head up and down while the trial court was speaking. (ART 437-38).

[10] The prosecutor also challenged Prospective Juror No. 9 because the juror seemed frustrated with the voir dire process and did not have a good rapport with the prosecutor. (ART 436-37). However, because "[t]he state trial court did not make a specific finding about [these demeanor-based] justification[s], [the Court] cannot presume that the trial court credited or discredited th[ese] reason[s], but instead [the Court] base[s] [its] determination upon the other justifications that the prosecutor offered." Briggs, 682 F.3d at 1177 (citing Snyder, 552 U.S. at 479).

unreasonable." Briggs, 682 F.3d at 1181; Jamerson, 713 F.3d at 1234.

**2.   Prospective Juror No. 5**

Petitioner's counsel made her second Batson motion after the prosecutor dismissed Prospective Juror No. 5:

> This juror is African-American.  And as the record has already reflected, my client is African-American. [¶] . . . This juror was a very strong individual who did not in any way come across or make statements that he was biased towards the defense.  As a matter of fact, from the defense's position, he was more inclined to be law and order.   He was very receptive to the People. . . .  [¶]  And I see no outward justification for dismissing him other than this man is African-American.

(ART 1038).  The trial court found that a prima facie case had been made and asked for the prosecutor's explanation.  (ART 1039).  The prosecutor responded:

> First of all, the record should reflect that on the jury there are three African-Americans at the current time.  [¶]  I've accepted the panel twice now.  And I think the last time there were three African-Americans on the panel.

As to this particular juror, . . . [defense counsel] says that he is a strong individual. And I completely agree that he's a strong individual. You can't have that many strong personalities on a jury and hope that they're going to be able to come to an agreement – that they're going to be able to come to a verdict.

He, in his interaction with the court, I think a lot of the times that he was answering questions he had his arms crossed; he was sitting back in his chair. To me it seemed like . . . that he was being rude in some ways. . . . [H]e definitely has a very closed body language. I didn't like the interaction he had with the court. I didn't feel like he showed the proper deference to the court. When the court . . . asked . . . him questions, he just summarily answered "no" to a lot of the court's questions. He wasn't willing to engage a lot of questions that we had. And I don't know if there has been any other juror who answered "no" to so many of the upfront questions.

. . . I also noticed . . . that when [defense counsel] was making some of her points, he was nodding, he was smiling to some other of the things that he said, whereas other jurors were not at that particular time.

1    So I felt like there may have been a rapport with

2    him and [defense counsel].

3

4 (ART 1039-40).

5

6    After additional argument (ART 1040-41), the trial court

7 denied the motion:

8

9    I don't know that when we do a <u>Wheeler</u> motion

10    necessarily that you have to have cause . . . – that

11    there has to be some legal basis.   It could be a

12    subjective basis.   [¶]   And it seems to the court when

13    one side has excused 11 or 12 and one side has excused

14    10, and it's all based upon some subjective criteria that

15    counsel uses to decide who they keep and who they excuse.

16    And I'm not so sure that . . . it's anything other than

17    some predilection or some strategy or theory as to who

18    they keep and who they excuse.

19

20    But with respect to <u>Wheeler</u> motions, it's all based

21    upon some sort of subjective . . . interpretation or

22    manifestation that either attorney basically feels that

23    that particular person will somehow not be the

24    appropriate juror for them based upon something that does

25    not rise to the level of cause.   [¶]   With respect

26    to . . . <u>Wheeler</u>/<u>Batson</u>/<u>Johnson</u> motions, it has to be

27    based upon . . . something to do with race other than

28

1  the fact that a person or a particular ethnic group is

2  basically excused peremptory.

3

4  And it just seems to the court that everything that

5  the People have said is really race-neutral and it has

6  nothing to do with . . . the fact that Juror No. 5 is,

7  in fact, an African-American male.  I must also indicate

8  that the People have accepted the panel twice, and there

9  were three African-American males on the panel at the

10  time that the People accepted twice.  [¶]  So it doesn't

11  seem to the court that there's any sort of rules or any

12  sort of ploy or any sort of intention on the part of the

13  People . . . to eliminate all African-Americans when the

14  People have accepted the panel as presently constituted

15  twice with three African-Americans.  So it just seems to

16  the court that [the prosecutor's] reasons for excusing

17  Juror No. 5 are totally subjective, they're completely

18  race-neutral, and I see no basis that the Wheeler motion

19  should be granted at this time.  There's three on the

20  panel.    There's  at  least  three  in  the  audience.

21  [¶]  . . . So it's race-neutral.  So the court is going

22  to deny it.

23

24  (ART 1041-43).  The California Court of Appeal affirmed, stating

25  that "[a]s to Prospective Juror No. 5, the record supports the

26  prosecutor's claim that the juror provided short, monosyllabic

27

28

28

answers to most questions."[11]  (Lodgment 7 at 6).  The appellate court indicated that "[b]ody language and the manner of answering questions are permissible race-neutral justifications for exercising a peremptory challenge," and concluded that "substantial evidence supported the trial court's finding that the prosecution did not engage in purposeful racial discrimination in exercising [a] peremptory challenge[] to Prospective Juror No. 5[.]" (Lodgment 7 at 6-7).  The Court reviews the California Court of Appeal's determination under § 2254(d)(2)'s deferential standard. Murray, 745 F.3d at 1006; Briggs, 682 F.3d at 1170.

Petitioner has not rebutted the California Court of Appeal's finding about the nature of Prospective Juror No. 5's responses to voir dire questions.  To the contrary, the record supports the prosecutor's claim that Prospective Juror No. 5 responded to most questions with short, monosyllabic answers.  (ART 689-94, 911-13, 923, 937-39).[12]  For example, the trial court asked prospective jurors to answer whether they or anybody close to them had ever been a crime victim; they or anyone they knew had ever been arrested; they or anybody close to them worked in law enforcement; they or anybody close to them suffered from serious mental illness and, if so, did they or the person(s) they knew take prescription

[11]  The California Court of Appeal also noted "[t]he prosecutor's other reasons for excusing Prospective Juror No. 5 – his body language and 'strong personalit[y]' – by their nature cannot be discerned in a reporter's transcript, but the trial court was in a position to witness and evaluate them."  (Lodgment 7 at 6).

[12] Prospective Juror No. 5 was originally Prospective Juror No. 19.  He became Prospective Juror No. 5 following the dismissal of another prospective juror. (ART 951).

medications to deal with the illness; they had strong feelings about the interaction between the justice system and people with mental illnesses; they believed that a person who commits a crime should not be prosecuted if they are mentally ill at the time they commit the crime; they would disregard an insanity defense if it was established; and they could be fair if gangs were mentioned at trial. (ART 641, 647, 649, 651, 653-54). While other prospective jurors provided detailed answers to these questions, Prospective Juror No. 5 responded brusquely, skipped several questions, and misinterpreted the scope of several of the questions he did answer:

> Okay. Number 1, have you or your family members been a victim of a crime? The answer is no. [¶] Number 2, have you ever been arrested? The answer is no. [¶] Number 3, anybody related to you involved in law enforcement? The answer is no. [¶] . . . Number 4, any mental illness in your family? No. [¶] That's all I have. I might have missed something.

(ART 690).[13] Thus, the record supports the prosecutor's observation about the manner in which Prospective Juror No. 5 answered questions, which is a valid, race-neutral reason for exercising a peremptory challenge. See Briggs, 682 F.3d at 1178 (juror's offhand demeanor and curt and sharp answers to prosecutor's questions was an appropriate race-neutral reason); United States

---

[13] The trial court responded "You did. . . . You missed a lot[,]" and proceeded to further question Prospective Juror No. 5, who expanded on some of his answers only when the trial court pressed him for details. (ART 690-94).

v. Thompson, 827 F.2d 1254, 1260 (9th Cir. 1987) ("Excluding jurors because of . . . a poor attitude in answer to voir dire questions is wholly within the prosecutor's prerogative."); United States v. Fitzgerald, 542 F. App'x 30, 32 (2d Cir. 2013) (that a prospective juror "gave 'monosyllabic responses'" is a valid, race-neutral reason for a peremptory challenge). Moreover, Petitioner has not identified, and the Court has not located, any similarly situated juror. "Thus, nothing in the record shows that this reason was clearly pretextual." Briggs, 682 F.3d at 1178; Jamerson, 713 F.3d at 1228.

Petitioner has also failed to show that the prosecutor's reliance on Prospective Juror No. 5's body language was pretextual. A prospective juror's demeanor is a legitimate race-neutral reason for a peremptory challenge. See Snyder, 552 U.S. at 477 ("[R]ace-neutral reasons for peremptory challenges often invoke a juror's demeanor. . . ."); Miller-El II, 545 U.S. at 252 ("peremptories are often the subjects of instinct"); McDaniels v. Kirkland, 839 F.3d 806, 813-14 (9th Cir. 2016) (affirming prior panel opinion that hostile looks or a negative attitude can be a legitimate basis for a peremptory challenge), cert. denied, 138 S. Ct. 64 (2017); Cummings v. Martel, 796 F.3d 1135, 1147 (9th Cir. 2015) (Giving the prosecutor dirty looks is "a valid reason for dismissing a potential juror."), amended by, 822 F.3d 1010 (9th Cir. 2016), cert. denied, 137 S. Ct. 628 (2017); Stubbs v. Gomez, 189 F.3d 1099, 1105 (9th Cir. 1999) (demeanor and lack of eye contact are race-neutral reasons for exercising a peremptory challenge). "A trial court is best situated to evaluate both the words and the

31

demeanor of jurors who are peremptorily challenged, as well as the credibility of the prosecutor who exercised those strikes." Ayala, 135 S. Ct. at 2201. Here, "the trial judge was in the best position to evaluate the credibility of the prosecutor's demeanor-based reasons – the California Court of Appeal deferred to that evaluation [(see Lodgment 7 at 6-7)], and [this Court] must as well."[14] Briggs, 682 F.3d at 1178; see also Snyder, 552 U.S. at 477 ("[D]eterminations of credibility and demeanor lie peculiarly within a trial judge's province, and we have stated that in the absence of exceptional circumstances, we would defer to [the trial court]." (citations and internal quotation marks omitted)); Williams, 354 F.3d at 1109 ("The trial judge had the unique opportunity to observe the demeanor of the prosecutor as he justified the peremptory strike, as well as [the prospective Juror] as she interacted with counsel during voir dire."). Petitioner has failed to provide any reason why deference to the trial judge is unwarranted here. Indeed, Petitioner does not cite any basis for concluding that the peremptory strike of Prospective Juror No.

---

[14] The trial court did not make express credibility findings. However, unlike the peremptory strike of Prospective Juror No. 9, the prosecutor gave only demeanor-based reasons for the exercise of his peremptory challenge against Prospective Juror No. 5. Therefore, as the trial court found that the prosecutor had not engaged in purposeful discrimination, it was reasonable for the California Court of Appeal to conclude that the trial court had implicitly accepted the prosecutor's demeanor-based reasons for striking Prospective Juror No. 5. Cf. Collins, 546 U.S. at 341-42 ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility [regarding a juror's alleged improper demeanor], but on habeas review that does not suffice to supersede the trial court's credibility determination."); Stevens v. Epps, 618 F.3d 489, 499 (5th Cir. 2010) ("it was not unreasonable" for the state supreme court "to conclude that the trial court implicitly credited" a demeanor-based justification for striking a prospective juror where the trial judge made no explicit finding as to the juror's demeanor but the prosecutor offered no other legitimate reason for the strike).

5 was pretextual (see Petition at 4-9; Reply at 1-10) and "nothing in the record shows that [the prosecutor's] reason[s] [were] clearly pretextual." Briggs, 682 F.3d at 1178.

Moreover, prior to exercising a peremptory challenge against Prospective Juror No. 5, the prosecutor twice accepted the jury with African-American jurors on it (see RT 633, 950, 1042), which "reinforce[s] th[e] conclusion" that the prosecutor "did not intentionally discriminate in jury selection."[15] Aleman v. Uribe, 723 F.3d 976, 983 (9th Cir. 2013); see also Sifuentes, 825 F.3d at 516 (A "trial court can reasonably credit a prosecutor's reasons when there is some evidence of sincerity, such as . . . that the prosecutor did accept minorities on the jury." (citation omitted)); Gonzalez v. Brown, 585 F.3d 1202, 1210 (9th Cir. 2009) ("The fact that African-American jurors remained on the panel may be considered indicative of a nondiscriminatory motive." (citation and internal quotation marks omitted)); United States v. Cruz-Escoto, 476 F.3d 1081, 1090 (9th Cir. 2007) ("[A]mple evidence supports the district court's conclusion that Cruz-Escoto did not establish purposeful racial discrimination [when] [t]he seated jury included two Hispanics who were not struck by the government.").

---

[15] Petitioner contends that in making this credibility determination, the trial court substituted its own reasoning and removed the prosecutor's duty to articulate his own reasons. (Reply at 7-8). To the contrary, it was the prosecutor who first raised the number of African-American jurors remaining on the panel after the peremptory challenge of Prospective Juror No. 5. (See ART 1039, 1042-43).

1    While Petitioner contends "[t]here was no evidence in the

2 record to demonstrate that [Prospective Juror No. 5 was] biased

3 toward the prosecution" (Reply at 8), "the nature of peremptory

4 challenges [is that] [t]hey are often based on subtle impressions

5 and intangible factors." Ayala, 135 S. Ct. at 2208.  Petitioner

6 has not demonstrated that the prosecutor engaged in purposeful

7 discrimination in exercising a peremptory challenge against

8 Prospective Juror No. 5.  Accordingly, the California Court of

9 Appeal reasonably concluded that the prosecutor did not have a

10 discriminatory motive when he challenged Prospective Juror No. 5.

11 Jamerson, 713 F.3d at 1234; Briggs, 682 F.3d at 1181.

12

13    In sum, Petitioner has not met his burden of showing that the

14 prosecutor's striking of Prospective Jurors No. 5 and No. 9 was

15 racially discriminatory.  As such, the California Court of Appeal's

16 rejection of Petitioner's Batson claim was not contrary to or an

17 unreasonable application of clearly established federal law, and

18 did not constitute an unreasonable determination of the facts.[16]

19 Petitioner is not entitled to habeas relief.

20

21

22

23

24

25

26

27 [16]  For the reasons set forth herein, the Court would reach the same
result even if engaging entirely in de novo review.  Berghuis, 560 U.S.
28 at 390.

34

## VII.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED, and this action is DISMISSED WITH PREJUDICE.

DATED:  December 19, 2017

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE
